**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
CENTRAL ISLIP DIVISION**

| | |
|---|---|
| GERALD NICOLAS, on behalf of himself and others similarly situated, | Case No.: 2:25-cv-6969 |
| Plaintiff, | **CLASS & COLLECTIVE ACTION COMPLAINT WITH DEMAND FOR JURY TRIAL** |
| vs. | |
| RICHLAND MANAGEMENT COMPANY, INC., 141 GREAT NECK ROAD CORP., PATRICIA ABRAMS, AND CHRISTIAN ANTIGUA, | |
| Defendants. | |

Plaintiff, Gerald Nicolas (hereinafter "Plaintiff"), on behalf of himself and others similarly situated, by and through his attorneys, Sage Legal LLC, hereby complains of the Defendants Richland Management Company, Inc. ("Richland"), 141 Great Neck Road Corp. ("141GNR") (Richland and 141GNR collectively hereinafter the "Corporate Defendants"), Patricia "Peggy" Abrams ("Abrams"), and Christian Antigua ("Antigua") (Abrams and Antigua collectively hereinafter the "Individual Defendants") (the Corporate Defendants and the Individual Defendants collectively hereinafter the "Defendants" or the "Joint Employers"), upon information and belief, as follows:

## NATURE OF THE ACTION

1.     Plaintiff respectfully brings this case alleging that Defendants have violated the Fair Labor Standards Act, as amended (hereinafter the "FLSA"), 29 U.S.C. §201 *et seq.*, the New York Labor Law ("NYLL"), Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, the New York State Human Rights Law ("NYSHRL"), New York Executive Law § 296

and the New York City Human Rights Law ("NYCHRL"), and the New York City Administrative Code § 8-107.

2.  He seeks damages for the non-payment of his overtime compensation during the statutory period, as well as for discrimination due to his race and color, as well as his unlawful termination.

## JURISDICTION AND VENUE

3.  This Court has subject matter jurisdiction over Defendants' FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

4.  The Court also has supplemental jurisdiction over Plaintiff's related claims arising under State and local laws, such as the NYLL pursuant to 28 U.S.C. § 1367 because they arise under a common nucleus of operative facts.

5.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claim occurred within the Eastern District of the State of New York.

6.  At all times material hereto, Plaintiff performed non-exempt doorman duties for the benefit of Defendants in New York including the village of Great Neck within the County of Nassau.

7.  At all times relevant, Defendants are covered as an enterprise under the FLSA because it generated at least $500,000.00 in revenue every year for the last three (3) years and/or engaged in interstate commerce as defined by the Act, 29 U.S.C. §§ 203(r) and 203(s).

8.  Plaintiff falls within the protections of the FLSA because he used tools that moved in the stream of interstate commerce to perform his duties and because he ordered parts for tenants from outside of the State of New York.

## PARTIES

9.      At all relevant times, Plaintiff was and is a resident of the County of Nassau within the State of New York.

10.     Upon information and belief, Richland is a corporation duly existing pursuant to, and by virtue of, laws of the State of New York that is authorized to do business in the State of New York, including in this district.

11.     Upon information and belief, 141GNR is a corporation duly existing pursuant to, and by virtue of, laws of the State of New York that is authorized to do business in the State of New York, including in this district.

12.     Upon information and belief, Abrams is a citizen of the State of New York residing within the County of Nassau.

13.     Upon information and belief, Antigua is a citizen of the State of New York residing within the County of Nassau.

14.     At all relevant times, the Individual Defendants had the power and authority to hire, fire, set the pay, schedule, and other terms and conditions of Plaintiff's employment and did so.

15.     At all relevant times, Plaintiff was an employee of the Defendants, located at 141 Great Neck Road, Great Neck, NY 11021 and 12 Bond Street, Great Neck, NY 11021.

## STATEMENT OF FACTS

16.     Based upon the information preliminarily available, and subject to discovery in this cause, Defendants did not properly compensate Plaintiff and others similarly situated for all hours worked, including for all overtime hours he worked for every workweek.

17.    Plaintiff commenced employment with Defendants in or around August 18, 2022, wherein he served as a doorman both at 141 Great Neck Road and at 12 Bond Street, both in Great Neck, NY.

18.    At all relevant times, Plaintiff was the only African American doorman in the building.

19.    Plaintiff consistently demonstrated professionalism, reliability, and a strong work ethic.

20.    He performed his duties with care, attention to detail, and full adherence to building protocols and safety procedures.

21.    Colleagues, contractors, and tenants alike observed his respectful demeanor and dedication to maintaining a safe, clean, and orderly environment.

22.    Plaintiff routinely went above and beyond his assigned responsibilities—whether by resolving maintenance issues independently to avoid resident complaints, stepping in to address neglected tasks when others failed to act, or deescalating difficult interactions with residents and staff without resorting to conflict.

23.    To this day, tenants of the Condo maintain a friendship with him despite the fact he is no longer working there

24.    Plaintiff regularly and consistently worked approximately eighty-and-a-half (80.5) hours per week across the aforementioned properties managed by Richland.

25.    His regular schedule was as follows: (i) 8:00 AM to 4:00 PM Monday through Friday at 141 Great Neck Road; (ii) 4:00 PM to 12:00 am Monday through Tuesday and Friday; and (iii) 8:00 AM to 4:00 PM Saturday through Sunday at 12 Bond Street.

26. During these hours, Plaintiff was entitled to an uninterrupted meal break of at least thirty (30) minutes, which Defendants often deducted from Plaintiff's hours worked.

27. However, Plaintiff's meal breaks were routinely interrupted by someone coming to the door, placing a phone call to the front desk, or being asked to do something by Abrams and/or Antigua.

28. As a result, Plaintiff's meal breaks should have been compensable.

29. In addition, Plaintiff was not permitted to leave his post at his scheduled time unless the next doorman came to relieve him.

30. However, the next doorman was frequently late, resulting in Plaintiff waiting approximately half an hour before he was able to leave his post.

31. This regularly occurred at least once a week such that Plaintiff worked more than forty (40) hours per week every week, resulting in Plaintiff working anywhere from forty-and-a-half to forty-two (40.5-42) hours per week virtually every week.

32. Moreover, Defendants improperly treated Plaintiff's employment at 141 Great Neck Road and 12 Bond Street as "separate" from each other, such that Plaintiff was not paid at overtime rates for hours worked in excess of forty (40) hours per week.

33. Throughout most of Plaintiff's employment with the Defendants, he was paid an agreed-upon hourly rate of $24.00 per hour.

34. But Plaintiff was entitled to receive at least $36.00 per hour for every hour worked in excess of forty (40) hours per week.

35. Rather than paying Plaintiff the wages he was entitled to as a matter of law, Plaintiff received payment of $24.00 per hour for up to forty (40) hours of work from 141 Great Neck Road and 12 Bond Street without regard to whether he worked any additional hours at either location.

36.     Moreover, Defendants inappropriately paid Plaintiff at straight time rates from both locations when they should have paid him at the overtime rate for all hours worked in excess of forty (40) hours per week.

37.     As a result of the foregoing, during the relevant period, Defendants failed to pay Plaintiff the proper minimum wages and overtime compensation under the law.

38.     Indeed, Defendants did so by failing to pay Plaintiff both an hourly wage that was equal to or greater than the minimum wage and Plaintiff's regular rate of pay for all time spent performing labor in excess of forty (40) hours of his regular workweek.

39.     In addition to these unpaid wages and overtime, Defendants repeatedly engaged in discrimination against Plaintiff, fostering a hostile work environment and engaging in retaliation against him for complaining about discrimination.

40.     Starting in late 2022, Plaintiff observed a notable shift in Antigua's behavior, characterized by increasingly hostile and unprofessional conduct directed toward him.

41.     This included instances of verbal abuse, unwarranted criticism, and exclusion from team activities.

42.     Similarly, Abrams consistently spoke in a condescending manner toward Nicolas, demonstrating her discriminatory animus with her nasty tone.

43.     Throughout his employment, Plaintiff had made multiple good-faith complaints, including concerns about ongoing verbal and physical harassment by his co-workers, as well as about management's failure to address this biased treatment of him.

44.     For example, on January 10, 2023, Antigua arrived at 141 Great Neck Road exhibiting a highly unprofessional demeanor, appearing visibly agitated and behaving erratically, as though he might have been under the influence of alcohol or some other substance.

45.    Antigua contacted Abrams by phone to inform her that he was sending Plaintiff home, but he failed to provide any explanation or justification for this action.

46.    The only statement he made with any clarity (following a brief pause in his otherwise disjointed speech) was, in sum and substance: "*[t]he tenants can't help you now."*

47.    The following day, January 11, 2023, after Plaintiff was absent from work, Antigua left a voicemail criticizing Nicolas characterized by a harsh and inappropriate tone.

48.    Subsequently, management contacted Plaintiff and requested that he report to the Richland office the following day for a meeting.

49.    On January 12, 2023, Plaintiff met with management and Antigua to address alleged ongoing issues.

50.    During this meeting, Plaintiff raised concerns regarding Antigua's discriminatory behavior towards him; however, no accountability measures were taken.

51.    When Plaintiff raised these concerns, he engaged in protected activity under the law.

52.    Throughout his employment, Plaintiff's internal complaints were consistently brought to the attention of supervisory personnel such as Antigua, Abrams, and other members of management.

53.    For example, on September 5, 2023, Plaintiff contacted Tom Flood ("Flood") via text message to request a follow-up meeting in light of continued harassment by Antigua.

54.    Although Flood initially agreed to the meeting, he subsequently canceled the scheduled appointments, demonstrating Richland's unwillingness to address Plaintiff's complaints of discrimination.

55.    On September 8, 2023, Plaintiff sent an additional message to Flood expressing his concern and frustration that the meeting had not occurred and that Antigua's harassing conduct remained unaddressed.

56.    By September 15, 2023, having received no meaningful response or support from management and continuing to experience a hostile work environment, Plaintiff submitted a formal request for vacation leave.

57.    Plaintiff also expressed concern that, despite his willingness to meet outside of regular work hours, Flood consistently failed to make time to discuss the matter.

58.    Notably, during this same period, Flood arranged and attended a breakfast meeting with another employee, suggesting an unequal allocation of managerial attention and a disregard for Nicolas' legitimate workplace concerns.

59.    Tellingly, the breakfast meeting occurred *over a year* after Plaintiff's repeated complaints and requests to discuss same.

60.    Throughout his employment, Plaintiff followed established building protocol.

61.    Nonetheless, on December 5, 2023, Antigua issued a disciplinary letter to Plaintiff.

62.    This letter detailed a misunderstanding with an illiterate stranger on November 30, 2023, along with prior minor complaints from tenants, one of which Plaintiff routinely complained about to management.

63.    Indeed, Plaintiff was never even told by management that this particular tenant made any complaints about him.

64.    In response, Antigua stated that the letter was issued primarily to create the appearance that management had addressed the situation, for legal or procedural purposes.

65.     Although Antigua attempted to reassure Nicolas by advising him not to worry, the explanation left Nicolas feeling uncomfortable and unsettled.

66.     Following this interaction, Plaintiff contacted Abrams to voice his disapproval of the disciplinary action.

67.     However, Abrams minimized his concerns and advised him not to make an issue of it.

68.     In February 2024, Plaintiff reported to a coworker that a wet paper towel was clogging the lobby sink.

69.     When another doorman arrived on site, he responded aggressively, swearing at Plaintiff and accusing him of consistently complaining about other employees.

70.     During the confrontation, Mauricio – the other doorman – physically shoved Nicolas, prompting Nicolas to immediately contact Antigua to report the incident.

71.     Antigua informed Nicolas that Mauricio would be suspended for two weeks as a consequence of his behavior.

72.     However, in the weeks that followed, Mauricio continued working without interruption, and no immediate disciplinary action was observed.

73.     When Nicolas inquired again, Antigua stated that Mauricio had since begun serving his suspension.

74.     The lack of transparency and delayed response left Nicolas feeling frustrated and disheartened.

75.     This incident was part of a pattern, in which Plaintiff observed that both Antigua and Abrams routinely dismissed his concerns and tolerated inappropriate conduct by other staff members, thereby contributing to a hostile work environment.

76.    On September 26, 2024, Plaintiff was abruptly informed that it would be his final day of employment and that he was being terminated.

77.    No formal explanation or documentation was provided.

78.    The individual who delivered the news added that Plaintiff would be missed, suggesting no issue with his work performance or conduct, and who repeatedly stated that his termination had nothing to do with his performance.

79.    Immediately following the announcement, Plaintiff informed both a contractor and a tenant that he had been let go.

80.    The contractor appeared visibly confused and inquired about the reason for the termination.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

81.    Plaintiff brings this action individually and as representatives on behalf of all their current and former non-exempt employees who have been or were employed by Defendants within the statutory period of three (3) years (the "Collective Action Period"), and who were compensated at rates less than the statutory rate of time and one-half, for all hours worked in excess of forty (40) hours per workweek (the "Collective Action Members").

82.    The collective action class is so numerous that joinder of all members is impracticable; although the precise number of such persons is unknown, and the facts upon which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there are approximately forty (40) Collective Action Members who worked for the Defendants during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, or knowledge of their claims.

83.    Therefore, Plaintiff submit that this matter should be certified as a collective action under the FLSA.

84.    Plaintiff will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the fields of employment law and class action litigation.

85.    Plaintiff has no interests that are contrary to or in conflict with those members of this collective action.

86.    This action should be certified as a collective action because the prosecution of separate actions by individual members of the class would create a risk of either inconsistent or varying adjudications with respect to individual members of the class, or adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

87.    A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.

88.    Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them.

89.    There will be no difficulty in the management of this action as a collective action.

90.    Questions of law and fact common to the members of the collection action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members.

91.     Among the common questions of law and fact common to Plaintiff and other Collective Action Members are:

    a.   Whether the Defendants employed Plaintiff and the Collective Action Members within the meaning of the FLSA;

    b.   Whether the Defendants failed to keep true and accurate wage and hour records for all hours worked by Plaintiff and the Collective Action Members;

    c.   What proof of hours worked is sufficient where the employer fails in its duty to maintain wage and hour records;

    d.   Whether the Defendants failed to pay Plaintiff and the Collective Action Members overtime compensation for all hours worked in excess of forty (40) hours per workweek in violation of the FLSA and the regulations promulgated thereunder;

    e.   Whether the Defendants are liable for all damages claimed hereunder, including but not limited to, compensatory, liquidated and statutory damages, interest, costs and disbursements, and attorney's fees.

92.     Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

93.     Plaintiff and others similarly situated have been substantially damaged by the Defendants' wrongful conduct.

## CLASS ACTION ALLEGATIONS

94.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure (hereinafter referred to as "Rules" or "Rule") under the NYLL as well as all applicable regulations thereunder.

**A.     Class Definition**

95.     Plaintiff seeks to maintain claims, pursuant to Rule 23, on behalf of himself and a class of all other employees (including but not limited to cooks, bakers, and drivers) who have been employed by Defendants at any time during the full statute of limitations period (hereinafter the "Class").

96.     Additionally, Plaintiff seeks to maintain claims, pursuant to Rule 23, on behalf of himself and a subclass of all individuals who have been employed by Defendants at any time during the full statute of limitations period (hereinafter the "Subclass").

97.     Plaintiff alleges, on behalf of himself and the Class, that Defendants violated the NYLL by, *inter alia*: (i) failing to compensate Plaintiff and the Class for all hours worked at their established regular rates of pay in accordance with their agreed terms of employment; (ii) failing to compensate Plaintiff and the Class at one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours in a workweek; (iii) failing to timely pay all wages owed; (iv) failing to provide Plaintiff and the Class with Notices of Pay Rate; and (v) failing to furnish accurate wage statements to Plaintiff and the Class.

98.     Plaintiff further alleges, on behalf of himself and the Subclass, that Defendants violated the NYLL by, *inter alia*, failing to compensate them and the Subclass at the State minimum wage for all hours worked.

99.     Plaintiff, the Class, and the Subclass have standing to seek such relief because of the adverse effects that Defendants' wage practices have had on them individually and as a group.

100.    The wage practices described herein are part of Defendants' normal course of conduct.

101.    Pursuant to Rule 23, Plaintiff's NYLL claims may be pursued by all similarly situated persons who do not opt out of the Class or Subclass.

**B. Numerosity and Impracticability of Joinder**

102.    The members of the Class and Subclass are so numerous that joinder is impracticable.

103.    While the exact number of the members of the Class is unknown to Plaintiff at this time, upon information and belief, there are approximately forty (40) members of the Class.

104.    While the exact number of the members of the Subclass is unknown to Plaintiff at this time, upon information and belief, there are approximately forty (40) members of the Subclass.

105.    Therefore, the numerosity requirement of Rule 23(a) is satisfied.

**C. Common Questions of Law and Fact**

106.    Common questions of law and fact, the answers to which will meaningfully advance this litigation, exist as to the Class and Subclass and predominate over any questions only affecting the members of the Class or Subclass individually.

107.    Indeed, there are few, if any, purely individual issues in this action.

108.    The questions of law and fact that are common to Plaintiff, the Class, and the Subclass include, without limitation:

(a) Whether Defendants failed to pay Plaintiff and the Class for all hours worked at their regular rates of pay and in accordance with their agreed terms of employment;

(b) Whether Defendants failed to pay Plaintiff and the Class all overtime wages owed to them;

(c) Whether Defendants failed to timely pay Plaintiff and the Class their wages;

(d) Whether Defendants failed to provide Plaintiff and the Class with Notices of Pay Rate;

(e) Whether Defendants failed to furnish accurate wage statements to Plaintiff and the Class; and

(f) Whether Plaintiff, the Class, and the Subclass are entitled to liquidated damages and injunctive relief.

109.    Therefore, the common question requirement of Rule 23(a) is satisfied.

**D. Typicality of Claims and Relief Sought**

110.    Plaintiff's claims are typical of the claims of the members of the Class and Subclass they seek to represent.

111.    Plaintiff, the Class, and the Subclass work or have worked for Defendants, and are or were subject to the same compensation policies and practices.

112.    The wage violations suffered by Plaintiff, and the damages resulting therefrom, are typical of Defendants' treatment of their Employees, generally, and of the Class and Subclass, specifically.

113.    Therefore, the typicality requirement of Rule 23(a) is satisfied.

**E. Adequacy of Representation**

114.    Plaintiff will fairly and adequately protect the interests of the Class and Subclass because Plaintiff 's interests are coextensive and aligned with those of the members of the Class and Subclass.

115.    Plaintiff has no interests adverse to the Class and Subclass he seeks to represent.

116.    Plaintiff is willing and able to represent the Class and Subclass fairly and vigorously, in part because they do not assert any individual claims separate and apart from the Class and Subclass he seeks to represent.

117.    Plaintiff has retained competent counsel who is qualified and experienced in employment class action litigation and able to meet the demands necessary to litigate a class action of this size and complexity.

118.    The combined interests, experience, and resources of Plaintiff and his counsel to competently litigate the individual and Class claims at issue in the instant action satisfy the adequacy of representation requirement of Rule 23(a).

**F. Requirements of Rule 23(b)(1)**

119.    Without certification of the Class and Subclass, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

120.    Accordingly, certification of the Class and Subclass is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiff, the Class, the Subclass, and Defendants.

121.    By filing this Complaint, Plaintiff preserves the rights of the members of the Class and Subclass with respect to the statute of limitations on their claims.

122.    Therefore, failing to certify the Class and Subclass would substantially impair and/or impede the ability of the members of the Class and Subclass to protect their interests.

**G. Requirements of Rule 23(b)(2)**

123.    Defendants acted on grounds, as described herein, generally applicable to Plaintiff, the Class, and the Subclass by denying Plaintiff and the Subclass minimum wages, and denying Plaintiff and the Class overtime wages, failing to pay them for all hours worked at their established rates of pay in accordance with their agreed terms of employment, failing to pay wages on time, and failing to provide Notices of Pay Rate and furnish accurate wage statements.

124.    These acts are not sporadic or isolated and support the request for final injunctive and declaratory relief with respect to Plaintiff, the Class, and the Subclass as a whole.

125.    Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the entitlement to, and denial of, minimum and overtime wages, wages paid at their regular rates of pay, timely payment of wages, Notices of Pay Rate and accurate wage statements.

126.    Declaratory and injunctive relief are the factual and legal predicates for Plaintiff's and the Class's and Subclass's entitlement to monetary and non-monetary remedies for such wage violations.

127.    Accordingly, injunctive and declaratory relief are among the predominant forms of relief sought in this case.

**H. Requirements of Rule 23(b)(3)**

128.    The common issues of fact and law affecting Plaintiff's claims and those of the Class and Subclass — including, without limitation, the common issues identified in the paragraphs above — predominate over issues affecting only individual claims.

129.    A class action is superior to other available means for the fair and efficient adjudication of Plaintiff 's claims and those of the Class and Subclass.

130.    The cost of proving Defendants' pattern and practice of denying minimum, overtime, and other wages makes it impractical for the members of the Class and Subclass to pursue their claims individually.

131.    This class action will not be difficult to manage for reasons including, without limitation, the discrete organizational nature of all members of the Class and Subclass (they must have worked for Defendants as Employees during the statutory period), as well as the common questions of law and fact described herein.

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF THE FLSA: UNPAID WAGES AND OVERTIME
#### (*on behalf of the Plaintiff and the Collective Action Members*)

132.    Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set herein at length.

133.    Defendants knowingly and willfully failed to pay Plaintiff the proper compensation corresponding to the overtime hours of work.

134.    In addition, Defendants failed to pay Plaintiff and the Collective Action Members the applicable minimum and regular hourly wages for all hours worked, including hours worked under forty (40) in a workweek, in violation of 29 U.S.C. § 206(a)(1)**.**

135.    Plaintiff is entitled to compensation for each of his overtime hours worked each work week.

136.    The overtime provisions set forth in the FLSA, 29 U.S.C. §§ 201, *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiff and the Collective Action Members.

137.    Defendants had failed to pay Plaintiff and the Collective Action Members overtime for hours that they worked in excess of forty (40) hours in a workweek.

138.    By reason of the said intentional, willful, and unlawful acts of Defendants, Plaintiff has suffered damages plus incurring costs and reasonable attorneys' fees.

139.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 225.

140.    Because Defendants' violations of the Act were not the product of objective good faith or otherwise objectively excusable, Plaintiff is entitled to liquidated damages.

141.    As a result of Defendants' unlawful acts, Plaintiff and the Collective Action Members have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees, costs, and other compensation pursuant to §§ 206(a)(1) and 207(a) of the FLSA.

## COUNT II
## VIOLATIONS OF THE NYLL: UNPAID WAGES AND OVERTIME
### (*on behalf of the Plaintiff and the Class*)

142.    Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set herein at length.

143.    During the full statutory period, Plaintiff and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq*., as well as all applicable regulations thereunder, including NYLL §§ 650 *et seq.* and 663, and the applicable regulations, 12 N.Y.C.R.R. § 142-2.2.

144.    The NYLL requires covered employers, including Defendants, to compensate employees at a rate not less than one and one-half (1.5) times their regular rate of pay for all hours worked in excess of forty (40) hours in a workweek and at a rate not less than one and one-half (1.5) times the applicable State minimum wage for all hours worked in excess of forty (40) hours in a workweek.

145.    Plaintiff and the Class were not exempt from the requirement that Defendants pay them overtime under the NYLL, and they are entitled to be paid overtime by Defendants for all hours worked in excess of forty (40) hours in a workweek during the full statute of limitations period.

146.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiff and the Class at a rate not less than one and one-half times their regular rate of pay for time spent performing off-the-clock work in excess of 40 hours in a workweek.

147.    As a result of Defendants' failure to compensate Plaintiff and the Class at a rate not less than one and one-half (1.5) times their regular rate of pay for all hours worked in excess of forty (40) hours in a workweek, Defendants have violated the NYLL and/or applicable regulations thereunder.

148.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the Class in accordance with the NYLL.

149.    Defendants' violations of the NYLL have significantly damaged Plaintiff and the Class and entitle them to recover damages to the greatest extent permitted by law, including, *inter alia*, the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

## COUNT III
## VIOLATION OF TITLE VII: DISCRIMINATION

150.   Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set herein at length.

151.   Defendants, by its actions and omissions, discriminated against Plaintiff on the basis of Plaintiff's race and color, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

152.   Defendants, through their employees, agents, and supervisors, subjected Plaintiff to a hostile work environment by engaging in unwelcome conduct based on Plaintiff's race and color that was sufficiently severe or pervasive to alter the terms, conditions, and privileges of Plaintiff's employment and to create an intimidating, abusive, and offensive working environment.

153.   Defendants knew or should have known of the discriminatory and harassing conduct and failed to take prompt and effective remedial action to stop it.

154.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer economic loss, emotional distress, humiliation, and other compensable damages.

## COUNT IV
## VIOLATION OF NYSHRL: DISCRIMINATION
## (HOSTILE WORK ENVIRONMENT)

155.   Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set herein at length.

156.   Defendants' conduct constitutes unlawful discrimination against Plaintiff on the basis of race and color, in violation of the New York State Human Rights Law, N.Y. Exec. Law § 296.

157.   Defendants' conduct created and perpetuated a hostile work environment.

158.    Such conduct was severe or pervasive enough to alter the terms, conditions, and privileges of Plaintiff's employment.

159.    As a result of Defendants' violation of the NYSHRL, Plaintiff has suffered damages including lost wages, emotional distress, and other compensatory damages.

**COUNT V**
**VIOLATION OF NYCHRL: DISCRIMINATION**
**(HOSTILE WORK ENVIRONMENT)**

160.    Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set herein at length.

161.    Defendants' conduct also constitutes discrimination in violation of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(1)**,** which prohibits discrimination on the basis of race and color.

162.    Defendants' conduct also violated N.Y.C. Admin. Code § 8-107(1) because they subjected Plaintiff to an intimidating, hostile, or offensive work environment because of a protected characteristic.

163.    As a result, Plaintiff suffered emotional distress, humiliation, and other damages.

164.    Defendants' actions were willful, wanton, and/or conducted with reckless disregard for Plaintiff's rights, entitling Plaintiff to punitive damages under the NYCHRL.

**COUNT VI**
**VIOLATION OF TITLE VII: RETALIATION**

165.    Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set herein at length.

166.    Plaintiff engaged in protected activity under Title VII**.**

167.    Plaintiff's protected activity included, but is not limited to, making good-faith complaints throughout his employment concerning the on-going verbal and physical harassment by his co-workers, as well as concerning management's failure to address same.

168.    Defendants thereafter retaliated against Plaintiff by terminating him, in violation of 42 U.S.C. § 2000e-3(a).

169.    As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff has suffered and continues to suffer damages.

## COUNT VII
## VIOLATION OF NYSHRL: RETALIATION

170.    Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set herein at length.

171.    Defendants retaliated against Plaintiff for opposing and/or reporting discriminatory practices, in violation of N.Y. Exec. Law § 296(7).

172.    As a result, Plaintiff has suffered lost wages, reputational harm, emotional distress, and other damages recoverable under the NYSHRL.

## COUNT VIII
## VIOLATION OF NYCHRL: RETALIATION

173.    Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set herein at length.

174.    Defendants retaliated against Plaintiff for engaging in protected activity under the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(7).

175.    Defendants' retaliatory actions were willful, wanton, and/or performed in reckless disregard of Plaintiff's rights, entitling Plaintiff to compensatory and punitive damages pursuant to the NYCHRL.

## JURY DEMAND AND PRAYER FOR RELIEF

176.    Pursuant to Rule 38(b), Plaintiff respectfully demands a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A.    Declaring that Defendants engaged in unlawful employment practices prohibited by the FLSA and NYLL for failure of Defendants to pay Plaintiff his overtime compensation.

B.    Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination and retaliation and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

C.    Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action;

D.    Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy the Defendants' unlawful employment practices.

Dated: Jamaica, New York
          December 18, 2025                              Respectfully submitted,

                                                         **SAGE LEGAL LLC**

                                                         By: */s/ Emanuel Kataev, Esq.*
                                                         Emanuel Kataev, Esq.
                                                         18211 Jamaica Avenue
                                                         Jamaica, NY 11423-2327
                                                         T: (718) 412-2421 (office)
                                                         T: (917) 807-7819 (cellular)
                                                         F: (718) 489-4155
                                                         E: emanuel@sagelegal.nyc

                                                         *Attorneys for Plaintiff*
                                                         *Gerald Nicolas, on behalf of himself*
                                                         *and others similarly situated*